DAN M. LEE, Justice,
for the Court:
Appellant appeals from a disciplinary action instituted by the Mississippi State Bar predicated on the filing of a complaint by his son. The disciplinary action stemmed from the alleged conduct of appellant in administering the estate of his former wife, deceased, whereby he allegedly made misrepresentations of matters to his minor chil-> dren, unauthorized purchases on their behalf and commingled the children’s funds with his own. At the conclusion of the hearing, the complaint tribunal found the formal charges of the committee on complaints of the bar well taken and amply supported by the record. Appellant was therefore suspended from the. practice of law for three years. We reverse.
Appellant’s former wife was killed in an automobile accident on December 27, 1977. She was survived by her two children, a son and a daughter, ages nineteen and seventeen respectively at the time of their mother’s death.
On February 2, 1978, appellant filed a petition for letters of administration in the matter of the estate of his former wife, setting forth that the main asset of the estate was .the unliquidated claim for her *1368 wrongful death. On February 9, 1978, letters of administration of her estate were issued to appellant as administrator of the estate, not as the attorney thereof. Appellant was subsequently removed as administrator of the estate upon petition filed by the minor children. He was directed to file an inventory and accounting by September 12, 1979. On October 16, 1979, the substituted administrator filed a petition for. contempt citation against appellant for. failure to file an inventory on November 13, 1978; however, upon motion of the substituted administrator, the first annual accounting and inventory were stricken. The chancery court took no further action on the contempt petition and had no active role in bringing the complaint against appellant. The chancellor found, upon substituting Robert Hadden as administrator, that “there was much bad blood between the minors and the administrator” which had reference to the family relationship. An amended inventory was subsequently filed by appellant on February 7, 1980, and approved by the court on April 17, 1980.
Approximately $11,800 passed through the estate. These funds were derived from a life insurance policy in the amount of $10,000 and $1800 from decedent’s insurance policy on her automobile. Four life insurance checks payable to decedent’s children were also issued following her death. Three of these checks were payable to the son in the following amounts: $20,000, $9,000 and $20,380.20. The remaining check was payable to the daughter in the amount of $20,380.20. According to appellant’s children, they endorsed the checks at his request with the understanding that all the proceeds therefrom were required to go into their mother’s estate. Appellant denied this. He thereafter deposited the three checks payable to his son into his office trust account. The check payable to his daughter was deposited into an account referred to as the house account, at the address where decedent had lived prior to her death and where the children continued to live thereafter.
Appellant offered into evidence various cancelled checks from three accounts, contending the monies spent were invested or spent for the use and benefit of the children. Three checks were offered from June 12, 1978, to July 6, 1978, aggregating $23,317, for stock account purchases in appellant’s name. These checks were drawn on appellant’s office trust account. According to appellant, this purchase was made with full knowledge and consent of the children. The children denied this. The stock account was later transferred to the children on June 23, 1980.
Appellant also purchased a piece of property referred to as the camp, with funds derived from his office trust account. He contended again this was done with his children’s consent and for their benefit. Title to the property was in appellant’s name and was later transferred to his son’s name. A $6,000 cancelled check was offered as evidence of the purchase.
Appellant offered into evidence 108 checks written on the house account, totaling $8,376.21. Fifteen checks were payable to his son for a total of $760. Twenty-three checks were payable to his daughter for a total of $2540. The remaining checks were payable to appellant, cash, the Elks Club and other third parties. Appellant contended all the checks were written for the use and benefit of his children.
Appellant also offered into evidence thirty-three checks drawn on his office account in the aggregate amount of $2,233.04. Two of the thirty-three checks were payable to his son for a total of $250 while only one of the checks was payable to his daughter in the amount of $250. The remaining checks were written to third parties. Appellant likewise contended here that all of the checks were written for the use and benefit of his children.
Seven checks from appellant’s office trust ■ account were introduced into evidence for a total of $1,121.90. Two checks were payable to appellant’s son for a total of $246.90. Three checks were payable to the daughter *1369 for an aggregate of $775. The remaining cheeks were payable to third parties. Appellant contended that these checks were written for the use and benefit of the children.
The total amount of documented payments, including stock account purchases, payments to cash, appellant, and third parties, represented $41,048.14 or, at the most $48,807, of the $61,760 received by appellant.
Appellant testified his inability to document the total amount received by him from the bhildren’s insurance checks was due to break-ins at his office by the children, the fact that the bank statements from the house account went to his children’s residence and, finally, the fact that he often advanced cash to his children when they needed it, later deducting the same from monies held for the children’s use.
The complaint tribunal found appellant occupied both a fiduciary and attorney/client relationship with his two children and had breached that relationship by commingling funds and property admittedly belonging to his children. Finding the formal charges of the Committee on Complaints of the Mississippi State Bar well taken, and amply supported by the evidence, the complaint tribunal suspended appellant from the practice of law for a period of three years.
I. Did the complaint tribunal err in finding an attomey/client relationship between appellant and his children?
Upon the death of his former wife, appellant was contacted by his children and asked to handle their mother’s business. He agreed, as any father would, to handle the estate and was subsequently approved by the chancery court and appointed administrator of his former wife’s estate. The estate was apparently opened primarily for the institution of a wrongful death action for the wife’s death. Guy C. Faggard was employed by the estate to bring this suit which was finally settled for $100,000.
Appellant never acted as attorney for the estate. He acted solely as administrator until his removal therefrom upon petition of the children. He received no remuneration for serving as administrator. The proof in the present case wholly failed to establish the relationship of attomey/client between appellant and his children. The only relationship established by the evidence was a biological fiduciary relationship between appellant and his children which existed only because of the relationship of the parties. The complaint committee, the complaint tribunal and this Court should not sit in judgment of whether appellant was a good or bad father. That was not and could not be the issue.
The record is replete with the wasteful nature of the children, evidenced by the fact that they spent approximately $115,000 in some eighteen months. At the time this complaint was filed, the only property remaining from the children’s inheritance consisted of the property appellant had invested in for the children and titled in his name.
Appellant, as the children’s father, had a legitimate concern over the children’s welfare. It was also his duty, as their father, to contest their spending habits, urging them to conserve a part of their inheritance for future needs. Knowing the nature and habits of his children, he attempted to police their spending activities in an effort to prevent the children from squandering their entire inheritance.
The present controversy erupted only when the money was gone except for that which appellant had invested. The dispute was merely a family squabble which was evidenced by the fact that the children sought to dismiss the proceedings against appellant by letter dated November 21, 1979.
Because the proof was totally insufficient to establish an attorney/client relationship between appellant and his children, the complaint tribunal erred in taking disciplinary action against appellant.
*1370 Because we have concluded that the evidence failed to establish an attorney/client relationship, we decline to address the remaining assignments of error on direct and cross-appeal.
REVERSED AND COMPLAINT DISMISSED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
PRATHER, J., took no part.